# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

ANDREW R. SPENGLER,

        Petitioner,

        v.                              Case No.  10-C-0772

UNITED STATES OF AMERICA,

        Respondent.

## ORDER DENYING SPENGLER'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DATED MAY 15, 2013, DISMISSING MULTIPLE GROUNDS OF SPENGLER'S MOTION UNDER 28 U.S.C. § 2255 (DOC. 26), DENYING SPENGLER'S MOTION FOR BAIL (DOC. 30), DENYING SPENGLER'S THIRD AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (DOC. 24), DENYING CERTIFICATE OF APPEALABILITY AND DISMISSING CASE

      This case comes before the court on Andrew Spengler's third amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 as well as his motions to reconsider and for bail.  This court previously dismissed grounds 1, 3, 4, 5, 6, 8, and 15 of the third amended motion.  Spengler asks the court to reconsider the dismissal of grounds 4 and 5 and maintains that he should be released on bail because he will have served his sentence after the court invalidates count one.  Because there is no basis to invalidate count one or otherwise grant Spengler relief from his judgment of conviction, all motions will be denied.

      Spengler, a former Milwaukee Police Officer, challenges his November 29, 2007, judgment of conviction in connection with attacks on Frank Jude and Lovell Harris outside Spengler's home in the early morning on October 24, 2004.  A jury found Spengler and two of his co-defendants, Jon Bartlett and Daniel Masarik, guilty of violations of 18 U.S.C. §§ 241 and 242.  Spengler was sentenced to 120 months on count one and 68 months on

count two, running consecutively for a total term of 188 months imprisonment. Spengler's conviction was affirmed on direct appeal, *United States v. Bartlett,* 567 F.3d 901 (7th Cir. 2009). On September 7, 2010, Spengler filed the pending § 2255 motion to vacate, and amended the motion twice.

The court is mindful that the Federal Rules of Civil Procedure do not expressly contemplate motions for reconsideration. Such motions are generally construed as being filed pursuant to Rules 59(e) or 60(b). *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir.1994). Rule 59(e) permits parties to file, within ten days of the entry of a judgment, a motion for reconsideration "to correct manifest errors of law or fact or to present newly discovered evidence." Fed. R. Civ. P. 59(e); *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). If the motion is filed after ten days, Rule 60(b) allows for relief from judgment for mistake, inadvertence, surprise, or excusable neglect, newly discovered evidence, fraud, a void judgment, a judgment that has been satisfied, released, or discharged; or any other reason that justifies relief. Fed. R. Civ. P. 60(b)(1)-(6).

Spengler's motion regarding the court's dismissal of grounds 4 and 5 of the court's order of May 15, 2013, simply rehashes arguments already presented to this court. These arguments were considered and rejected. Although the arguments directed at grounds 4 and 5 do not provide a bases for reconsideration under either rule, the court will discuss the bases for their dismissal before turning to the merits of the remaining grounds.

First, Spengler argues that the consecutive nature of his sentence exposes him to double jeopardy in violation of the Fifth Amendment because the two counts of conviction arise from the same incident. Although he believes this argument was raised on appeal,

counsel instead argued that the district court abused its sentencing discretion in several respects: (1) the court failed to comment on three of Spengler's asserted grounds for a downward departure, (2) the court unreasonably rejected a fourth ground for a downward departure, (3) the court sentenced Spengler to an above-the-Guidelines sentence without notice, (4) the court failed to explain its reasons for making Spengler's sentences consecutive, (5) the court assumed that Spengler used a firearm, and (6) the court failed to address the relevant sentencing factors under 18 U.S.C. § 3553. *United States v. Spengler*, No. 08-1197, Doc. 31 (7th Cir. Dec. 1, 2008). Spengler never argued that the consecutive sentences violated the double jeopardy clause. Indeed, the Seventh Circuit addressed Spengler's argument that his sentence was unreasonably high when evaluated under the criteria in 18 U.S.C. § 3553(a), but the remaining arguments were considered and rejected without comment. *Bartlett,* 567 F.3d at 905.

Because this double jeopardy issue was not raised on appeal, Spengler must overcome his procedural default by showing good cause for failing to raise the issue and actual prejudice, or otherwise establish that the refusal to consider the issue would be a "fundamental miscarriage of justice." *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002) (quoting *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir.1996)). However, Spengler cannot satisfy this burden inasmuch as his double jeopardy argument fails the test set forth by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), and *Whalen v. United States*, 445 U.S. 684, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980). "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied

3

to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304. In *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L. Ed. 2d 1405 (1958), the Court rejected the opportunity to abandon *Blockburger* and explained as follows:

> "The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does not make the several different regulatory controls single and identic."

357 U.S. at 389.

Count one of the indictment charged each defendant with conspiring to violate the federal constitutional rights of Frank Jude and Lovell Harris in violation of 18 U.S.C. § 241. The indictment identified five overt acts that the defendants and other conspirators committed in furtherance of the conspiracy. In contrast, count two charged each defendant with violating 18 U.S.C. § 242 by assaulting Jude while acting under color of law, thereby depriving him of his right not to be subjected to an unreasonable seizure. Hence, to convict Spengler on count one, the jury had to find (1) a conspiracy existed – that is an agreement or mutual understanding involving two or more persons, (2) that the purpose of the conspiracy was to injure, oppress, threaten or intimidate one or more individuals, intending to interfere with the free exercise or enjoyment of a right protected by the laws or Constitution of the United States, and (3) the defendant knowingly and voluntarily joined the conspiracy. 18 U.S.C. § 241; *see also Federal Criminal Jury Instructions of the Seventh Circuit*, 18 U.S.C. § 241, p. 151 (1999 ed.) To find Spengler guilty on count two, the jury was required to find that he (1) deprived a victim of a right secured by the Constitution of the United States, (2) acted under the color of law, and (3) acted willfully.

4

18 U.S.C. § 242; *United States v. Brown*, 250 F.3d 580, 584 (7th Cir. 2001). Moreover, for count two to constitute a felony, the jury had to find bodily injury resulted from Spengler's acts. 18 U.S.C. § 242. Hence, in contrast to § 241 which made the agreement to violate constitutional rights a felony, § 242 prohibits the violation for those rights.[1]

The second argument raised in Spengler's motion for reconsideration is predicated on a belief that the joint and several restitution – imposed by the court – runs afoul of the Seventh Amendment. Again, this argument is procedurally defaulted because counsel did not include it in his appellate brief. Further, Spengler cannot establish prejudice resulting from any such failure because there is no authority to support his position. *See United States v. Scott*, 405 F.3d 615, 619 (7th Cir. 2005) ("[T]he amount of criminal restitution is determined by the judge, whereas a suit for damages is a suit at law within the Seventh Amendment's meaning.") The Mandatory Victims Restitution Act of 1996 provides that "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h).

Turning to Spengler's pending third amended motion for a writ of habeas corpus, relief under § 2255 is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice. *See Harris v. United States*, 366 F.3d

---

[1] The court also notes that *Pinkerton v. United States* provides that a defendant may be charged separately for conspiracy and for the substantive offenses that also were overt acts of the conspiracy. 328 U.S. 640, 643, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946).

5

593, 594 (7th Cir. 2004). Motions to vacate a conviction or correct a sentence ask a court to grant a remedy to a person who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006). Further, a court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

While a petitioner must generally raise all issues on appeal to avoid procedural default, an ineffective assistance of counsel claim may be brought in a § 2255 petition regardless of whether the claim was raised on appeal. *Masarro v. United States*, 538 U.S. 500, 504,123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003). A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011).

The first set of arguments, which are set forth in grounds 2, 10, 11, 12, and 13 of Spengler's third amended motion, were never raised on direct appeal. These arguments overlap inasmuch as they all challenge the federal government's ability to prosecute Spengler under 18 U.S.C. § 241 and 242. Spengler asserts that this court lacked jurisdiction to try the charges because the events at issue were local in nature, zealously prosecuted by the State of Wisconsin, and had no connection to interstate commerce. He further asserts that the events fall outside of § 241 and the Civil Rights statutes because the indictment never alleged that the events occurred because of race. Finally, he

6

contends that the government added "color of law" as an element in order to make § 241 applicable to him.

Although these arguments were not raised on direct appeal, the court allowed Spengler to add allegations of ineffective assistance of counsel so the court will evaluate these claims under this standard. The indictment charged Spengler with violations of two separate federal criminal civil rights statutes: 18 U.S.C. §§ 241 and 242. The authority for these statutes is found under the last clause of section 8 of Article I of the United States Constitution, in which Congress has the power to make all laws necessary and proper for exercising its powers under the Constitution. This clause grants Congress broad authority to enact federal legislation. *United States v. Comstock*, 560 U.S. 126, 130 S. Ct. 1949, 1956, 176 L. Ed. 2d 878 (2010). In addition, section 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees contained in § 1 by enacting "appropriate legislation." *See City of Boerne v. Flores*, 521 U.S. 507, 536, 117 S. Ct. 2157, 138 L. Ed.2d 624 (1997). Because the right against unreasonable searches and seizures is found in the Fourth Amendment of the Constitution and is applicable to states under the due process clause of the Fourteenth Amendment, it follows that § 241 and § 242 constitute means that are rationally related to the implementation of a constitutionally enumerated power. *See Comstock*, 130 S. Ct. at 1956.

The court underscores that this is a Fourth Amendment case. It need not involve interstate commerce or a racial motivation. Thus, alternatively, Spengler argues that § 241 cannot apply to him because the statute is directed exclusively at private individuals.

7

Section 241 provides:

> If two or more persons conspire to injure, oppress, threaten or intimidate any person in any State . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States . . . .

18 U.S.C. § 241. Unlike § 242, § 241 is not limited to conduct taken under the color of law. However, the alleged constitutional violation in this case – unreasonable seizure – can only be violated by state action.

Case law supports the application of § 241 to defendants acting under the color of law. For example, the United States Supreme Court has held that § 241 encompasses the due process and equal protection clauses of the Fourteenth Amendment, and that the inclusion of Fourteenth Amendment rights within the compass of 18 U.S.C. § 241 does not render the statute unconstitutionally vague. *United States v. Guest*, 383 U.S. 745, 753, 86 S. Ct. 1170, 16 L. Ed. 2d 239 (1966). Similarly, the Supreme Court has held that Congress has the power to punish a conspiracy by election officers to stuff a ballot box in an election for a member of Congress. *United States v. Saylor*, 322 U.S. 385, 64 S. Ct. 1101, 88 L. Ed. 1341, *reh'g denied* 323 U.S. 809, 65 S. Ct. 28, 89 L. Ed. 645 (1944). Finally, in *United States v. Price*, the Supreme Court held that whatever the ultimate coverage of § 241 may be, it extends to "conspiracies otherwise within the scope of the section participated in by *officials alone* or in collaboration with private persons." 383 U.S. 787, 798, 86 S. Ct. 1152, 16 L. Ed. 2d 267 (1966) (emphasis added). The Court reasoned that:

> The Fourteenth Amendment protects the individual against state action, not against wrongs done by individuals. *Williams I*, 341 U.S. at 92, 71 S. Ct., at 593 (opinion of Douglas, J.). In the present case, the participation by law enforcement officers, as alleged in the indictment, is clearly state action, as we have discussed, and it is therefore within the scope of the Fourteenth Amendment.

8

*Id.*, 383 U.S. at 799.  Ultimately, the government had the authority to charge Spengler and his co-defendants with a conspiracy to deprive Jude and Harris of their civil rights while acting under color of law.  The government was not required to charge a private citizen along with Spengler.

In his reply to the government's response, Spengler offers an alternative argument: private citizens cannot perform an unreasonable seizure or violate the Fourteenth Amendment.  However, this argument ignores that the government charged and the jury found that Spengler was acting under the color of law.  There was sufficient evidence at trial to establish that the defendants asserted their authority as police officers notwithstanding that the events occurred at a house party while the officers were not in uniform.  Witnesses testified that the defendants referred to themselves as police officers and the officers regarded themselves as being on duty as police officers on the morning of October 24, 2004.  Katie Brown testified that Spengler kept asking about the location of a missing police badge, told them that he was a cop, and ordered them out of their truck. (Case No. 06-CR-273; Doc. 221 at 67.)  Similarly, Kirsten Antonnisen recalled being told by defendants not to call the police because "we are the police."  (Case No. 06-CR-273; Doc. 231 at 89.)  Both victims, Harris and Jude, testified similarly that the defendants identified themselves as police officers.  (*Id.*, at 206; Doc. 224 at 158.)  The jury heard additional testimony that the officers considered themselves on duty.  In a sworn statement of co-defendant John Bartlett, read by government witness Aaron Weiss, Bartlett stated it was his opinion that there were others there that were off duty that had placed

themselves on duty because it's just a matter of taking police action. (Case No. 06-CR-273, Doc. 222 at 93, 94.) Jon Clausing testified that people at the scene were identifying themselves as police officers. (Case No. 06-CR-273, Doc. 223 at 103.)

Hence, Spengler's jurisdictional arguments were defaulted and he cannot establish prejudice. Moreover, there was a clear constitutional basis for federal jurisdiction over Spengler's violent actions. Also, to the extent that Spengler raised additional concerns regarding the ability of the federal government to prosecute him after he was acquitted in state court, the court previously addressed these concerns in its discussion of the dual sovereignty doctrine in its order of May 15, 2013.

Next, in his seventh ground for relief Spengler maintains that the government failed to turn over exculpatory material provided by Ryan Lemke – who plead guilty shortly before trial – in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Spengler assumes that Lemke must have made a statement as part of his plea negotiations because he testified favorably for Spengler in the state trial. In addition, Spengler accuses the government of relying upon the perjured testimony of Jude and Detective William Smith and of withholding a statement by Bartlett.

Aside from the fact that Spengler never raised this issue on appeal, *Brady* provides "that the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 432, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) (citations omitted). To establish a *Brady* violation, a defendant must show: "(1) evidence favorable to the

10

defendant (2) that is suppressed by the prosecution, (3) resulting in material prejudice to the defendant." *Newell v. Hanks*, 335 F.3d 629, 632 (7th Cir. 2003).

Spengler has provided no evidence that exculpatory information exists or existed at trial and that the government failed to disclose this evidence to him. Moreover, the government denies possessing any exculpatory statement by Lemke, and Spengler's speculation is insufficient to establish a violation. That Lemke provided testimony favorable to Spengler in state court does not mean that he provided a favorable statement to the federal government, particularly where a number of people had committed perjury in the state court and others had claimed to suffer memory loss. *See Bartlett*, 567 F.3d at 905. In addition, any claim of prejudice by Spengler is undermined by his familiarity with Lemke's prior testimony and knowledge that Lemke invoked the Fifth Amendment during Spengler's federal case.

The arguments regarding the alleged perjured testimony similarly fail. In *Mooney v. Holohan*, 294 U.S. 103, 55 S. Ct. 340, 79 L. Ed. 791 (1935), *Pyle v. Kansas*, 317 U.S. 213, 63 S. Ct. 177, 87 L. Ed. 214 (1942), and *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959), the Supreme Court held that a prosecutor violates due process when he knowingly uses perjured testimony to secure a conviction. To receive a new trial based on the use of alleged perjured testimony, Spengler must establish that: (1) the prosecution's case included perjured testimony; (2) the prosecution knew, or should have known, of the perjury; and (3) there is a likelihood that the false testimony affected the judgment of the jury. *United States v. Saadeh*, 61 F.3d 510, 523 (7th Cir.1995) (internal citations omitted). "Mere inconsistencies in testimony by government witnesses

11

do not establish the government's knowing use of false testimony." *Id.* Rather, "the alleged perjured testimony must bear a direct relationship to the defendant's guilt or innocence." *Id.* The court also considers whether the defendant had adequate opportunity to expose the alleged perjury on cross-examination. *Id.*

Spengler cites testimony from state court in which Jude said that he could not identify anyone in the courtroom, recall whether Spengler was present while he was being taken down, or was otherwise present in the group who hit and kicked him. At trial in this court, Jude testified that he remembered Spengler being present when he got out of the truck where he had been seated across from Spengler's home, but he did not remember whether Spengler was one of the people who pulled him from the truck. (Case No. 06-CR-273; Doc. 224 at 161.) Spengler was the officer who asked Jude whether he had proof that he, Jude, was an Appleton police officer. (*Id.*, at 162.) After that, Jude recalled Spengler's face and looking straight into Spengler's eyes. (*Id.*) Jude testified that he felt a gun at his temple but could not see a face. (*Id.*, at 168.) The voice he thought was Spengler's shouted "I'm the fucking police, I can do whatever I want to do. I could kill you." (*Id.*)

Jude was impeached by Spengler's counsel and counsel for the other co-defendants. Beginning at page 210 of Volume 5 of the trial transcripts, Spengler's counsel methodically walked Jude through his testimony questioning his ability to see Spengler and to recall details that he could not recall during the preliminary hearing in the state court case on March 16, 2005. (*Id.*, at 210-234.) Jude recalled the prior testimony, and admitted he could not say that it was Spengler who got him out of the truck. (*Id.,* at 216, 218.) Jude

further acknowledged that he was not in a position to tell the jury who caused the injuries or who participated in the punching, kicking, and poking. (*Id.*, at 220.) Spengler's counsel ended his cross-examination by pointing out that Jude had filed a civil suit seeking money damages. (Case No. 06-CR-273, Doc. 232 at 12.)

There were similar inconsistencies in Smith's testimony, which were highlighted during his cross-examination by Spengler's counsel. During the federal trial, Smith testified that Spengler appeared highly intoxicated when Smith arrived on the scene at approximately 5:15 a.m. (Case No. 06-CR-273, Doc. 225 at 10.) According to Smith, Spengler had bloodstained eyes, was totally uncooperative, and very agitated. (*Id.*) However, on cross-examination, Spengler's counsel revisited that testimony in comparison with the written report he prepared of his interview of Spengler. (*Id.*, at 30.) The report did not note that Spengler was belligerent, uncooperative, agitated, highly intoxicated, or had bloodshot eyes. (*Id.*, at 30, 31.) Smith also admitted that he had no information to suggest that Spengler had been drinking after 3 a.m. and that the photo of Spengler taken by Sergeant Gacek in the early morning hours of October 24, 2004, did not show that Spengler had bloodshot eyes. (*Id.*, at 31, 34.) According to Smith, he did not personally observe any marks, cuts, scrapes or bruises on Spengler's hands or knuckles. (*Id.*, at 35.) And, while there was a small spot of discoloration near Spengler's left knee, there did not appear to be any other stains of blood on any other part of Spengler's clothing. (*Id.*, at 36.)

After a thorough review of Jude's and Smith's testimony and consideration of the relevant case law, the court is not persuaded that the government relied on false testimony during Spengler's federal trial. Although the evidence reflected inconsistencies with

respect to prior statements or testimony of government witnesses, those inconsistencies were properly vetted on cross-examination.[2]

Spengler's ninth ground for relief is framed as a violation of his "Sixth Amendment right to compel favorable witnesses and right to a public trial." He takes issue with statements by the government during the opening statement regarding his badge being stolen and believes reference to the badge implied the "theft was a ruse." Spengler asserts that a federal informant was in a position to testify but that the government would not identify the informant so that Spengler could call him or her as a witness. In addition, he asserts that the government claimed the theft did not occur and that the court placed certain reports under seal over Spengler's objection. Spengler alleges that two government witnesses were "polygraphed by FBI Agent Mark Robel" and that the court excluded all polygraph statements.

After reviewing the government's opening statement, it appears that Spengler is taking issue with the following language:

> Now, moments after the four of them left, Mr. Spengler announced that his police badge and a small wallet which was used for the badge was missing. Now, no witness will testify, at this trial, will testify that any of those four people, Frank Jude, Lovell Harris, Kristen Antonissen or Katie Brown, took the badge. No one will testify to seeing any of the four of them with the badge. But the assumption was immediately made at the party, well, those

---

[2]In his third amended motion, Spengler alleged that the government failed to turn over *Brady* material and allowed perjured testimony of Jude and Smith to go uncorrected. In a third paragraph, Spengler indicated that he had "become aware of statement(s) made to the Government by co-defendant Bartlett and that confessions by Bartlett have a profound impact on Spengler. Spengler asked to assert an additional ground related to the newly discovered statements if the court granted discovery.

Apparently, Spengler is on a fishing expedition. The September 29, 2006, statement indicated that Masarik was not around while others were trying to handcuff Jude. The exhibits filed in Masarik's civil case, Case No. 11-C-48, indicate that Spengler's counsel was provided a copy of Bartlett's redacted statement and that the testimony was the subject of a motion to sever. (Case No. 06-CR-273, Doc. 133.) However, the entirety of that statement was filed in Masarik's case and it is inculpatory for Spengler. Spengler never elaborated on his argument and the court does not find it worthy of further consideration in this proceeding.

14

strangers who walked in and then walked out a few minutes later must have taken the badge and they've gotta be stopped.

(Case No. 06-CR-273, Doc. 220 at 100.)  The government referenced the missing badge on several other occasions commenting that "men were yelling about the missing badge," "all four of them were immediately searched" and there was no badge, and that Harris realized "at this point it was not really about the badge any longer and he couldn't save himself by not having the badge." (*Id.,* at 101.)  In addition, the government represented that "no evidence will be presented in this trial which will prove that the badge was actually stolen or, if it was, who may have stolen it.  Nevertheless, the evidence will indicate that the stated motive for the violence was to obtain information on the badge and where it went." (*Id.*, at 111.)

Spengler mischaracterizes the government's opening statement inasmuch as the government took the position that no evidence would be presented regarding whether the badge was stolen.  The issue at trial was whether the officers violated the right against unreasonable searches and seizures.  Evidence of what happened to the badge was irrelevant.  No theft would justify the attack on Jude and Harris that occurred on the morning of October 24, 2004.

At sentencing, the issue of the badge was raised after defense counsel suggested the acts of the other officers were not reasonably foreseeable to him.  The court inquired of counsel whether the allegation that the badge was stolen set in motion a series of events, which Spengler's counsel vehemently denied.  (Case No. 06-CR-273, Doc. 242 at 8.) Defense counsel cited evidence during trial and in the "11,000 pages of discovery" that Spengler "double-checked and triple-checked" to make sure that the badge was gone.  (*Id.,*

15

at 9.)  The government responded that there was no basis to suggest that "somehow this conduct potentially might be justified because the loss of a badge is some sort of serious risk to public safety." (*Id.*, at 40.)

It was defense counsel who argued at sentencing that Spengler's actions were appropriate, having encountered a badge missing, and then finding a person in the street who was impersonating a police officer.  (*Id.,* at 56.)  According to counsel, a reasonable person would have suspected that something was amiss.  Moreover, the badge had been owned by Spengler's grandfather.  (*Id.,* at 57.)  Nevertheless, the court found that Spengler had the power to say "cool it" because he had set in motion the chain of events.  (*Id.*, at 58.)

Ultimately, the court ended the discussion finding that any documents about whether Spengler had a reasonable belief as to whether the badge was missing was irrelevant to the question of whether the officers acted reasonably with respect to Jude and Harris.  (*Id.,* at 62.)  The court found that there was testimony that Spengler believed his badge was missing and acted on that belief before sealing the proffered documents.  (*Id.,* at 63.)  Spengler was given the opportunity to speak and told the court that when the badge was missing, it affected him profoundly because it belonged to his grandfather when he was a patrolman.  (*Id.,* at 83.)  In hindsight, he wished he had treated it "like a piece of tin and let it go."  (*Id.*)

Spengler is further mistaken about the extent to which the court limited the testimony about the badge.  The court has thoroughly reviewed the twenty-five transcripts relating to the final pretrial conference and motions, opening and closing statements, and

the jury trial.  (Case No. 06-CR-273, Docs. 190-191, 219-240, 244.)  The missing badge

was discussed by various witnesses.  Indeed, at one point the court allowed Spengler's

counsel to follow a line of questioning which suggested that Jude had a motive to steal the

badge.  At page 332 - 334 of volume 4 of the jury trial transcript, the following exchange

took place:

| | |
|---|---|
| Mr. Hart: | Here's where it's going.  Mr. Jude in one of the two performances dressed up as a police officer in uniform. He testified in an earlier hearing at a previous trial that he didn't have a badge.  It's limited inquiry, but I'd like to establish a foundation to ask Mr. Jude.  I'm not gonna spend a lot of time on it. |
| Mr. Johnson: | It would be our position, Your Honor, that the point of the questioning could only be to show that, well, Frank Jude needed a badge, therefore, he may have stolen the badge.  And whether Mr. Jude stole the badge or not is not relevant because it doesn't tend to prove any of the issues. |
| | What's relevant about the badge, and there's been testimony about it, is the fact that no one saw these people with a badge, no one found a badge on them, the badge wasn't found in the truck and so forth.  And attempting in this kind of sideways way to prove that Mr. Jude at least had a motive to steal the badge, is essentially irrelevant because it doesn't tend to prove anything which is of consequence to the outcome of the case. |
| Mr. Hart: | I don't agree with that.  If the government is not going to argue that no badge was recovered, if they're not going to make that argument then I don't need to get into this. |
| | But if the government is going to argue that this was an unreasonable seizure of Mr. Jude and Mr. Harris's person because no badge was ever recovered, then I think it's appropriate just to at least inquire.  The badge is certainly at issue.  Really that's my only purpose. |

17

| Mr. Johnson: | If this was just an illegal search for the badge we would not be here. We're here because drastic actions like those alleged in the - in the indictments occurred – or at least are being alleged by us. |
|---|---|
| | This is not a case about whether they wrongfully arrested Frank Jude or wrongfully looked through his pockets. Even if that was wrongful, which it may have been, that's not why we're here. We're here about the excessive force used in dealing with Mr. Jude and Mr. Harris. And there's no light which is shed on that by whether or not he may have had a motive to steal the badge. |
| The Court: | Well, I do note that the government has asked several witnesses whether or not a badge was recovered. So the subject is relevant, and the defense should have the opportunity to address the subject of Mr. Jude's costume inasmuch as it's suggested that he may have had some reason to augment his costume. |

(Case No. 06-CR-273, Doc. 223 at 334.) The court has located no other ruling that excluded evidence proffered by Spengler during trial establishing that the badge was stolen by Jude or Harris. Further, the issue of who stole the badge was irrelevant to the sentence imposed. Consequently, there is no merit to Spengler's argument in ground nine that he was prevented at trial from presenting testimony on this issue. Moreover, evidence regarding the actual location of the missing badge and the identity of any alleged thief would have created a trial within a trial thereby confusing the issues and creating undue delay over a tangential issue.

As to polygraph evidence referenced in ground 9, Spengler filed a motion on July 13, 2007, to permit use of polygraph evidence for impeachment purposes in his examination of Clausing and Schabel and to show that the government was no longer interested in testing either witness after they got the version of the events that they wanted

18

into record. (Doc. 155.) The court, mindful of its discretion on the issue, denied the motion under Rule 403, citing *United States v. Kamiles*, 609 F.2d 1233. (Case No. 06-CR-273, Doc. 223 at 87.) On appeal, Spengler challenged the court's ruling regarding the government's polygraphs, which the Seventh Circuit rejected without discussion.

This court cannot review the Seventh Circuit's decision. If Spengler is arguing that the court's ruling denied him compulsory process to call Robel, he did not raise this argument previously. Moreover, Spengler did not contend that his counsel was ineffective regarding ground nine, yet as to ground fourteen Spengler contended that counsel was ineffective for a myriad of reasons. Even if the court construes Spengler's assertions respecting polygraph testing as an ineffective assistance claim, he cannot establish prejudice. Clausing and Schabel admitted they lied. Clausing acknowledged he lied to the FBI when initially interviewed. (Case No. 06-CR-273, Doc. 223 at 789-790, 848, 939-947.) Schabel acknowledged that he pled guilty to obstruction of justice because he had made false statements under oath. (Case No. 06-CR-273, Doc. 227 at 1852-1853, 1882.) Moreover, in affirming Spengler's judgment of conviction, the Seventh Circuit rejected the argument that the court abused its discretion in excluding such evidence under Rule 403 of the Federal Rules of Evidence. Because the court did not err on the issue of admissibility, Spengler has no argument that his right to compulsory process was violated.

The final argument raised by Spengler in ground nine is that the government should have granted Lemke use immunity. This argument was never raised by Spengler or any other defendant, and it was Masarik – not the government – who called Lemke as a

19

witness.  Further, as discussed above, there is nothing more than speculation to support Spengler's theory as to how his defense was prejudiced.  Ground nine will be dismissed.

Next, ground fourteen is nothing more than a list of all the ways that Spengler's trial and appellate counsel failed him.  Many of the arguments have been addressed above.  In addition, Spengler submits that the Seventh Circuit chose to address one of his five issues that were raised on appeal.  That the Seventh Circuit found these to be without merit does not mean that counsel could have made a more effective argument.  Further, Spengler has failed to present a single argument that this court believes would have been successful on appeal.[3]

Three of these arguments have not been addressed elsewhere in this decision and warrant a brief discussion.  First, Spengler argues that Bartlett's statements were admitted thereby depriving him of his right to confront Bartlett.  However, nothing in those

---

[3]The court has attempted to address all of the assertions made by Spengler in his third amended motion, supplemental brief, and reply brief.  Some of the arguments were made with no factual bases and therefore require no further discussion.  For example, buried in ground fourteen is the assertion that counsel refused to prepare Spengler to testify at trial.  The court finds no support for such assertion in the record.  On July 19, 2007, the court had the following exchange with Spengler:

THE COURT: Mr. Spengler, your counsel has indicated that it is your decision not to testify in this case.  Is his statement accurate?
MR. SPENGLER: Your Honor, it's a difficult decision to make. I took under the advice of my counsel, Mr. Kinstler and Mr. Hart. I respect their advice and came up with my own decision not to testify in these proceedings.
THE COURT: Has anyone used any threats, force or intimidation to get you to waive your privilege to testify in your own defense?
MR. SPENGLER: No, sir.
THE COURT: Do you understand that you're not required to testify but that you can decide to testify if you wish?
MR. SPENGLER: Yes, sir.
THE COURT: Do you understand that if you waive your right to testify at the end of the defense case you can't come back later and say I want to testify?
MR. SPENGLER: I understand that, sir.
THE COURT: Knowing that, again I ask, is it your decision not to testify?
MR. SPENGLER: That is correct.
THE COURT: Very well. I accept your decision.

(Case No. 06-CR-273; Doc. 227 at 125-126.)

20

statements incriminated Spengler. (Case No. 06-CR-273, Doc. 222 at 422-437.) The only reference to Spengler in Bartlett's statements was that Bartlett attended a housewarming party for Spengler at approximately 7:00 or 7:30 p.m. on the night in question and that Spengler was outside at some point. (*Id.,* at 423, 425.) Moreover, the jury was properly instructed that the statement of a co-defendant cannot be used in deciding whether the government has proven its case against any other defendant. (Case No. 06-CR-273, Doc. 139 at 13.) Hence, counsel was not ineffective in failing to raise this argument during trial or on appeal.

Second, Spengler asserts that the government called Shannon Nelson for the sole purpose of using her testimony against him and that her testimony was nothing more than "puffing" by Spengler after the completion of the conspiracy. Nelson testified regarding statements made by Spengler on a boat ride in the summer of 2005. (Case No. 06-CR-273, Doc. 232 at 21-55.) Counsel for Spengler's co-defendants objected to the testimony citing potential *Bruton* issues, but the government agreed to limit Nelson's testimony to the statements by Spengler and to avoid identifying any other participants by name. (*Id.*, at 24-26.) The court approved this approach. (*Id.*) In any event, the statements by Spengler were admissible as admissions by an opposing party under Federal Rule of Evidence 801(d)(2)(A). Again, counsel was not ineffective in failing to object to Nelson's testimony or raise the issue on appeal.

Third, Spengler believes that counsel ignored forensic evidence such as photographs of a beer keg showing condensation near the top which undermines the government's theory of alcohol consumption and that no clothing or footwear of the

21

"suspects" was confiscated by investigators. The relevance of such evidence is unclear, and certainly does not establish deficient performance by counsel or prejudice to Spengler. Therefore, ground fourteen will be dismissed.

Ground sixteen suggests that Spengler was denied his right to representation when the court's ruling during Bartlett's cross-examination of Schabel precluded further questioning by Spengler and other defendants. The court assumes that Spengler is referring to an exchange that took place during Schabel's testimony in which Bartlett's counsel was attempting to ask Schabel about prior statements and the government objected on the ground that it appeared that Schabel was called as a witness for the sole purpose of impeaching him. (Case No. 06-CR-273, Doc. 227 at 1855-1867.) Bartlett's counsel maintained that the defense was entitled to show that Schabel had a motive to falsify his testimony and that the testimony was inconsistent with the testimony of other government witnesses. The court ruled that the defense was barred from further impeachment "with respect to statements that may have been made by Mr. Schabel on some occasion prior to this trial unless it can be shown during other portions of this direct examination that those statements are relevant to what Mr. Schabel may have done on the scene on Ellen Street." (*Id.*, at 86.)

In ruling, the court cited Rule 403 and stated that the line of questioning would take an unreasonable amount of time and give rise to unfair prejudice as it was not going to retry what took place in Milwaukee County Circuit Court. (*Id.*) The court further commented that it would be unfairly prejudicial to discuss what took place in state court because it would suggest a double jeopardy problem where there was none. (*Id.*, at 88.)

22

At no time did Spengler's counsel join in the discussion or otherwise attempt to pursue the line of questioning. Spengler's counsel effectively cross-examined Schabel regarding Schabel's involvement and extracted an admission from Schabel that when he stomped on the back of Jude's head, Schabel was acting alone without direction from anyone. (*Id.,* at 95-100.) Hence, ground sixteen fails.

Ground seventeen of the third amended motion accuses the government of withholding evidence that would have warranted a severance from Spengler's co-defendants. According to Spengler during a trail break, Attorney Gerald Boyle told Spengler's counsel that he would "eat Spengler up" if he took the stand. Attorney Kohn later prepared an affidavit stating that he was "inadvertently allowed admission into a debriefing room where at least one member of the U.S. Attorney's Office, defense counsel for Bartlett, and Bartlett were meeting in what appeared to be a debriefing." (Case No. 11-C-48, Doc. 4-1 at ¶ 3.) Based on these assertions, Spengler concludes that there was a "possibility of antagonistic conduct by Bartlett's defense, a refusal to give prior favorable testimony for Spengler because Bartlett would self-incriminate, or the introduction of a confession by Bartlett causing a *Bruton* violation."

This argument is based on pure speculation. The government responds that there were no negotiations with Bartlett at the time of trial. Furthermore, Spengler's reference to the "possibility" of an antagonistic defense is an insufficient basis for severance under any standard. Additionally, there is no evidence of a *Bruton* violation and no evidence that Bartlett was unwilling to provide favorable testimony for Spengler.

23

Before concluding, the court notes that under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal this court's denial of his § 2255 motion. Instead, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See id.,* at 336; 28 U.S.C. § 2253(c)(2). Under this standard, Spengler must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000)). Because Spengler has not shown that jurists of reason would debate the myriad of jurisdictional arguments and those raised under the Fifth, Sixth, Seventh and Fourteenth Amendments, a certificate of appealability will be denied.

IT IS ORDERED that Spengler's motion for reconsideration of the court's order dated May 15, 2013, dismissing multiple grounds of Spengler's motion under 28 U.S.C. § 2255 is denied.

IT IS FURTHER ORDERED that Spengler's motion for bail is denied.

IT IS FURTHER ORDERED that Spengler's third amended motion to vacate, set aside, or correct sentence is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

24

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 27th day of September, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

25